Las Monjas Racing Corporation, Plaintiff and Appellee, *v.* John Doe et al., Defendants; Francisco Fontanals, Intervener and Appellant. Las Monjas Racing Corporation, Plaintiff and Appellee, *v.* John Doe et al., Defendants; Raimundo Faura, Intervener and Appellant.

Nos. 6054 and 6055. Argued July 11, 1932.—Decided July 26, 1932.

*Julio Reguero* for appellant in case No. 6055. *Molina, Dubón & Ochoteco* for appellant in case No. 6054. *Feliú & La Costa* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

The appeals numbered 6054 and 6055 were taken from the same judgment. Their dismissal has been asked on the ground that they are frivolous. We will consider in a single opinion herein the question raised, which is the same in both cases.

On June 28, 1931, horse races were held at the race track belonging to Las Monjas Racing Corporation. Betting went on as usual in the banks (*bancas*) and pools. Seven races took place. In accordance with the law and the regulations, the total amount of money bet, after deducting the sums fixed by the statute, must be paid to the person or persons who pick the seven winning horses. In case no one picks the seven winners, or when any given race is canceled, the amount is divided among those who picked six or the largest number of winners.

It happened that one of the races was canceled. The distribution was, therefore, to be made among those who picked the winners in the six remaining races. As there were persons who, in addition to picking the winners in the six races held valid, also picked the winners in the one canceled, and they claimed exclusively the total amount to be distributed, the corporation that held the races deposited in the district court the amount of $15,991.50, to be paid to the persons who might be lawfully entitled thereto.

Francisco Fontanals, one of the persons who picked the seven winners, asked leave to intervene and was permitted to file his complaint. Raimundo Faura, another better who had picked the winner in each of the seven races, also filed his

claim. The betters who picked the six winners likewise claimed their rights. After it was stipulated to give to those who had picked the seven winners the proportionate share that would belong to them if the total amount were distributed among the betters on six or seven winners, and after all the parties were summoned, the case went to trial.

The interveners attempted to introduce evidence to show that the action of the jury in canceling the second race was erroneous. The betters who had picked six winners objected, and the court ruled that such evidence was inadmissible and that it had jurisdiction to review the decision of said jury; and judgment was rendered accordingly.

From that judgment Fontanals and Faura took separate appeals.

Sections 18 and 19 of the Insular Racing Act of 1927 (Session Laws, p. 206) as amended by Act No. 44 of 1929 (Session Laws, p. 238), read as follows:

"Section 18.—The jury shall see to the enforcement of such rules as the Insular Racing Commission may adopt for the operation of races. The decisions of the jury shall be final and unappealable, except in those cases in which a penalty of more than two months is imposed, in which cases appeals may be taken to the Insular Racing Commission, which shall be obliged to decide said appeals within an unextendable term of ten (10) days, and its decisions shall be final and unappealable, except as provided in section 6 of this Act. . . ."

"Section 19.—In all matters to be decided by such jury as a body, the decision of the majority shall be final; it being understood that corporations or persons speculating in the race-track business, as well as horse owners, jockeys, stablemen, trainers, or any other interested persons, shall be subject to said decisions; *Provided,* That whenever in the opinion of the jury there have been during any race grave irregularities, deficiencies, or mismanagement showing *prima facie* that the race has been conducted and carried out in an illegal and malicious manner, it shall suspend its effects as regards payment of the pool and at the *bancas,* but it shall immediately report its decision, and the grounds therefor, to the Insular Racing Commission, which shall, within a term of not to exceed forty-eight (48)

hours after the race, and after a public hearing of the interested parties, decide as to the validity or nullity of said race, and the decision rendered shall be final, executory and unappealable, and no complaint or judicial recourse whatsoever, either regular or special, shall be admitted against it by any judge or court of justice.

"When the jury shall, under any circumstance, disqualify a horse, the money bet on said horse in the *bancas* shall be returned to the interested persons."

If section 18 is applied, it must be held that the decisions of the jury are final and unappealable, except in the cases therein specified, among which the instant case is clearly not included.

If, as it seems to be proper, application is made of section 19, which was construed by this Supreme Court in the case of *Ortiz* v. *Insular Racing Commission,* 39 P.R.R. 696, it must be concluded that the trial court did not err in refusing to admit evidence of the facts which served as a basis for the decision of the jury.

All that the law requires is that when in the opinion of the jury there have been during any race grave irregularities, deficiencies, or mismanagement of a serious nature, showing *prima facie* that the race has been conducted and carried out in an illegal and malicious manner, and it suspends its effects as regards the payment of the pools and *bancas,* it must immediately report to the Insular Racing Commission its decisions and the grounds therefor, and said Insular Racing Commission, within a term of not to exceed forty-eight hours from and after the race and after a public hearing of the interested parties, shall determine the validity or nullity of said race. This decision shall be final, executory, and unappealable, and no complaint or judicial recourse whatsoever, either regular or special, shall be admitted against it by any judge or court of justice.

It appears from the documents incorporated in the record that the jury informed the commission concerning the races held on June 28, and its report contains the following paragraph:

"The second race was canceled for the purpose of the pool over the dissenting vote of juror Marrero, because the prescribed 10 minutes allowed for the start had already elapsed."

It further appears that the commission approved the report on the following day, June 29, as may be inferred from the following notation:

"Regarding the report Commissioner Barbosa states that he is aware of the fact that Las Monjas Racing Corporation has deposited in the district court the total proceeds of the pool pertaining to the races held on June 28, 1931, and he moves that the commission publish the following statement for the information of all concerned:

" 'The Insular Racing Commission has received the report of the jury wherein it is stated that the second of the races held on June 28, 1931, in Las Monjas race track was canceled for the purpose of the pool by a majority vote, in accordance with section 239 of the regulations.

" 'By virtue of the provisions of section 19 of the Racing Act, which prescribes that in all matters to be decided by said jury as a body the decision of the majority shall be final, and it appearing that every person or corporation engaged in the business of horse racing, including owners, jockeys, stablekeepers, trainers, and any other persons interested, are bound by such decisions, the function of the commission in said case is confined to approving said report, as to which no remedy lies either before the commission or before the courts of justice, in accordance with the rule laid down by the Supreme Court in the case of *Ortiz* v. *Racing Commission,* 39 P.R.R. 696.

" 'Therefore, the total amount of the pool pertaining to said day must be distributed by the manager of the pool of Las Monjas race track among the persons who picked the six winning horses.

" 'The foregoing motion was adopted by a unanimous vote.' "

That being so, it appears that the law has been complied with and that, in accordance with its provisions, no judicial intervention lies. However, upon examining the published statement concerning the resolution adopted by the Insular Racing Commission, which is the only thing appearing in the record, we note that nothing is expressly stated therein regarding the public hearing required by law to be held previously. This is not alleged as a ground for nullity in the complaints

or petitions filed by the interveners. It is assigned as error in the brief of Faura. In the face of this assignment, which raises a question relating, not to the reasons for the action taken by the jury, but to the proceedings had before the commission, can it be maintained that this appeal is frivolous? In the case relied on by the lower court, by the petitioners, and by the commission, to wit, *Ortiz* v. *Insular Racing Commission, supra,* this Court said:

"Thus the decision of the jury is made to turn upon the opinion formed by that body, not upon the actual existence of 'grave irregularities, deficiencies or mismanagement of a serious nature showing *prima facie* that the race has been conducted and carried out in an illegal and malicious manner.' No provision is made for a trial *de novo* before the racing commission. There is no provision for the formality of a trial, or even of an investigation, in the first instance. The jury may act at once upon the impression derived from personal observation. The commission may proceed upon the decision of the jury, and the grounds therefor, and a starting point and basis for the public hearing to be extended to the interested parties. A public hearing of the interested parties is all that the statute requires. The petition in the instant case expressly alleges that the decision of the commission was rendered after such a hearing."

Is there any basis in the record for holding that the hearing took place? We have said that in the published report of the resolution adopted by the commission it is not specifically stated that such hearing was held, but there is really no evidence to show that the commission did not act after hearing the interested parties or after giving them an opportunity to be heard. And the whole record is before us. The regularity of the proceedings is presumed.

We have already stated that this question was not raised in the complaints or petitions, nor was any evidence introduced at the trial.

Under these circumstances, we are of opinion that as it can not be asserted that the commission failed to hold the hearing required by law, these appeals are frivolous, and should therefore be dismissed.